UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Carroll L. Johnson, ) | Civil Action No.: 6:14-cv-3579-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Carroll L. Johnson, ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #19].

**Factual Findings and Procedural History**

The facts, including the medical timeline and evidence contained within the record, are adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #19, pp. 5-14]. On August 23, 2011, Plaintiff filed a claim for DIB and SSI, alleging a disability onset date of August 24, 2009. [ECF #14, p. 3]. The Social Security Administration denied his application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") on January 19, 2012. [ECF #14, p. 3]. The ALJ held a hearing on June 5, 2013. [ECF #10-2, p. 26]. The

ALJ denied Plaintiff's claim on July 19, 2013, finding that Plaintiff was not under a disability as defined in the Social Security Act, as amended. [ECF #10-2, p. 36]. The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2) The claimant has not engaged in substantial gainful activity since August 24, 2009, the alleged onset date (20 C.F.R §§ 404.1571 et seq., and 416.971 et seq.).
>
> (3) The claimant has the following severe impairments: gout and arthritis of multiple joints including hips, left ankle and foot, right knee, and lumbar spine; depression; and obesity (20 C.F.R. §§ 404.1520(c) and 416.92(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with restrictions that require simple, routine tasks; no reading or writing beyond unskilled level; a supervised environment; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; a two hour stand [option] at the work station; no climbing of ladders or scaffolds; no more than occasional use of foot pedals or other controls with the lower extremities; and avoidance [of] unprotected heights, vibration, and machinery with exposed, hazardous moving parts.
>
> (6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> (7) The claimant was born on February 5, 1960, and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is

>able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).
>
>(9) Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
>(10) Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).
>
>(11) The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[ECF #10-2, pp. 28-36].

Plaintiff requested a review of the ALJ's decision on August 29, 2013. [ECF #10-2, pp. 18-20]. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. [ECF #10-2, p. 2]. On September 8, 2014, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #14; ECF #16; ECF #17], and the Magistrate Judge issued his Report and Recommendation on August 28, 2015, recommending that the Commissioner's decision be affirmed. [ECF #19, p. 29]. The Magistrate Judge recommends affirming the Commissioner's decision because Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. [ECF #19, p. 29]. Plaintiff filed objections on September 14, 2015. [ECF #20]. Defendant replied to these objections on September 21, 2015.

[ECF #22].

## Standard of Review

**I.     Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

**II.     The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a

prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

**Analysis**

I. **Weight of Treating Physician's Opinion**

Plaintiff's first objection is that the Magistrate Judge erred in finding that the ALJ properly weighed the opinion of the treating physician, Dr. Seehorn. [ECF #20, p. 1]. Plaintiff argues the ALJ must articulate specific reasons whenever the ALJ discredits the opinion of a treating physician. [ECF #20, p. 2]. While courts generally accord greater weight to the testimony of a treating physician, this rule does not require the treating physician's testimony be given controlling weight. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Mastro*, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178.

If the ALJ decides a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following non-exclusive list of factors to determine the weight to afford the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; (5) whether the physician is a specialist in the area in which he is rendering an opinion; and (6) other factors that support or contradict the opinion. 20 C.F.R.

§ 404.1527(c); *see also Johnson*, 434 F.3d at 654. Social Security Ruling ("SSR") 96-2p requires an ALJ to provide specific reasons, supported by the record, for the weight afforded a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, at *5.

It appears from the record that Dr. Seehorn completed an "Arthritis Questionnaire" on May 16, 2013. [ECF #10-8, pp. 34-37]. Dr. Seehorn opined that Plaintiff exhibited signs of depression, and that Plaintiff's impairments are reasonably consistent with the symptoms and limitations described in the evaluation. [ECF #10-8, p. 35]. He noted on the questionnaire form that Plaintiff could walk an estimated four city blocks without rest, sit continuously for more than two hours, and stand continuously for thirty minutes. [ECF #10-8, p. 35]. He further noted that Plaintiff could safely lift less than ten pounds, has significant limitations in reaching, handling, and fingering, and cannot climb ladders. [ECF #10-8, p. 36-37]. Finally, Dr. Seehorn anticipated that Plaintiff's impairments or treatment would cause the patient to be absent from work more than twice a month. [ECF #10-8, p. 37].

The ALJ determined that Dr. Seehorn's opinion was "not supported by his progress notes and is inconsistent with other substantial evidence from both treating and non-examining physicians." [ECF #10-2, p. 33].[1] As pointed out by the Magistrate Judge, unfortunately the record does not contain any additional notes or medical records evidencing Dr. Seehorn's opinions or medical findings while Plaintiff was in his care. The ALJ also set forth the findings of two of the state agency physicians, Adrian Corlette and Warren Holland, who reported that Plaintiff could perform medium work, and described activities that Plaintiff could perform that were contrary to Dr. Seehorn's findings. [ECF #10-2, p. 33]. The ALJ noted that the state agency psychologist, Leslie Burke, completed a psychiatric

---

[1] A review of the record shows that other than the Arthritis Questionnaire, there were not any progress notes provided to the ALJ to support or contradict Dr. Seehorn's opinion. The more a medical source presents supporting evidence, the more weight will be given to that opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

8

review and found Plaintiff was mildly restricted from activities of daily living. [ECF #10-2, p. 33]. The ALJ therefore afforded those opinions considerable weight because they were consistent with the existing medical records. [ECF #10-2, p. 34]. Considering the relatively sparse information provided from Dr. Seehorn when compared with the evidence in the record from other medical sources, the ALJ provided an adequate explanation for not attributing controlling weight to Dr. Seehorn's opinion. This Court finds that there is substantial evidence in the record to support the ALJ's finding with respect to the weight attributed to Dr. Seehorn's opinion.

**II.     Plaintiff's Credibility & Mental Impairment Assessment under *Mascio***

Plaintiff further objects to the Magistrate Judge's recommendation that the ALJ properly determined Plaintiff's credibility and mental residual functional capacity in light of a recent Fourth Circuit opinion, *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). [ECF #20, pp. 4-6]. Nearly two years after the ALJ made his decision in this case, the Fourth Circuit considered a claimant's argument that an ALJ erred by determining the claimant's residual functional capacity prior to assessing her credibility, erred in failing to conduct a function-by-function analysis of the claimant's residual functional capacity, and erred in failing to include the limitation for concentration, persistence, or pace in a hypothetical to a vocational expert. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In considering the credibility determination of the claimant in that case, the Fourth Circuit cited to the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.* at 639. The *Mascio* Court concluded that this type of analysis "gets things backwards" by implying

9

that first the ALJ determines the ability to work and then uses that determination to assess credibility. *Id.* Drawing upon this same conclusion, the *Mascio* Court noted that this boilerplate language suggests an analysis contrary to the Social Security agency's rulings. Social Security Ruling 96-8p defines the residual functional capacity to be an assessment that includes any related symptoms, such as pain. *Id.* Accordingly, a claimant's pain and the residual functional capacity are not separate assessments to compare against one another. *Id.*[2]

In *Mascio*, the claimant also objected to the ALJ's failure to conduct a function-by-function analysis of claimant and the use of a legally insufficient hypothesis to the vocational expert. *Id.* at 635-38. At step three, the ALJ had found that Mascio had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication. *Id.* at 637. The *Mascio* court first determined that, depending upon the circumstances of each case, remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *Id.* at 636. The *Mascio* court also agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id*. at 638, citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) as joining the Third, Seventh, and Eighth Circuits. The court agreed with Mascio that "the ability to perform simple tasks differs from the ability to stay on task" and that "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Mascio*, 780 F.3d at 638.

---

[2] Importantly, the rulings also provide that an ALJ's "decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

10

In this case, the ALJ succinctly discusses Plaintiff's credibility subsequent to the finding that Plaintiff has the RFC to perform light work with certain listed restrictions. [ECF #10-2, p. 32]. The ALJ uses the following language in discussing Plaintiff's credibility: " I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these systems are not entirely credible for the reasons explained in this decision." [ECF #10-2, p. 34]. The ALJ does not cite which reasons he is referring to, or otherwise provide any specific details as to why he made this credibility determination. The ALJ follows this portion of the decision with the statement, "[a]s shown above, the alleged severity of the claimant's subjective complaints . . . is not supported by the evidence." [ECF #10-2, p. 34]. Again, the ALJ does not otherwise provide which evidence he is referring to in finding claimant's subjective complaints are not supported by the record. The ALJ states that Plaintiff's statements concerning the "intensity, persistence and limiting effects" of his systems were inconsistent with the RFC assessment. [ECF #10-2, p. 34]. However, the ALJ also states that the RFC is supported, in part, by claimant's daily activities and testimony. [ECF #10-2 p. 34]. The ALJ did not provide any additional explanation of his credibility finding regarding Plaintiff's statements or otherwise analyze Plaintiff's credibility in another portion of the decision.

The ALJ also found at step three that Plaintiff did not meet a mental impairment listing, but he made the following finding: "[i]n general terms, the claimant's mental impairments, singularly or in combination, impose the following general restrictions: activities of daily living–mild; social functioning–mild; concentration, persistence, or pace–moderate." [ECF #10-2, p. 31]. At the hearing, the ALJ restricted his hypothetical he asked the vocational expert to "simple, routine tasks" and "no reading or writing beyond unskilled level in a supervised environment." [ECF #10-2, pp. 67-68]. In the

11

RFC, the ALJ found that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) with restrictions that require simple routine, tasks; no reading or writing beyond unskilled level" and "a supervised environment." [ECF #10-2, p. 32].

After considering the Fourth Circuit's decision in *Mascio*, this Court finds that the ALJ conducted a similar credibility assessment to the assessment in *Mascio*. Here, the ALJ includes the same boilerplate language found in *Mascio*. [ECF #10-2, p. 34]. In other words, much like the ALJ in *Mascio*, it is unclear from the ALJ's decision whether he assessed Plaintiff's credibility against the benchmark of the previously determined RFC. [ECF #10-2, p. 34]. The ALJ does not otherwise separately assess Plaintiff's credibility or indicate what portions of the evidence in the record caused him to question Plaintiff's credibility.[3] With respect to the Plaintiff's mental residual functional capacity, despite the ALJ's finding that Plaintiff had a moderate limitation in concentration, persistence, or pace, the hypothetical posed to the vocational expert did not account for this limitation because it failed to account for the ability to stay on task, as discussed in *Mascio*. It is also not clear from the ALJ's decision what evidence he accounted for in analyzing Plaintiff's mental restrictions or whether he properly accounted for limitations in concentration, persistence, or pace as they relate to the RFC, contrary to the holding in *Mascio*.[4] Accordingly, this Court cannot determine whether the ALJ's

---

[3] The Magistrate Judge indicates that the ALJ references Dr. Patel's findings in his decision. While it is true that the ALJ set forth Dr. Patel's findings (as well as the findings of other physicians who assessed Plaintiff) in an earlier section of the decision, the ALJ does not attribute his credibility determination to discrepancies between Plaintiff's testimony or symptoms with Dr. Patel's findings. Similarly, the references in the R&R to Dr. Butler and Dr. Kelly's examinations that were set forth as relevant factual findings, though instructive, are not pointed out by the ALJ as controlling as to the determination of Plaintiff's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009) (noting the long-standing principle of administrative law that requires a court to review the ALJ's decision based on the reasoning offered by the ALJ, rather than post hoc rationalizations).

[4] The Magistrate Judge points to Dr. Burke's psychiatric review of Plaintiff to determine that the ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace. [ECF #19, pp. 24-25]. The ALJ did not state in his decision that he specifically relied upon Dr. Burke's findings in his determination of Plaintiff's mental impairments other than to say he gave her opinion "considerable" weight. Dr. Burke found that Plaintiff could

credibility determination as to Plaintiff and assessment of Plaintiff's mental residual functional capacity is supported by substantial evidence or reached through application of the correct legal standard. Additionally, because the ALJ does not otherwise properly analyze Plaintiff's credibility elsewhere in the decision, the error in determining the RFC prior to the credibility cannot be considered harmless. *See Mascio*, 780 F.3d at 639. Accordingly, in light of *Mascio*, this Court finds that the ALJ's potentially improper assessment as to Plaintiff's credibility determination and the mental residual functional capacity require remand.

Plaintiff also objects to the mental assessment because the ALJ opinion did not address his ability to handle stress. This Court agrees with the Magistrate Judge that the ability to handle stress was appropriately considered to the extent that Plaintiff was limited to performing unskilled work. *See* 20 C.F.R. § 404.1568(a). Thus, the ALJ's restriction to unskilled work and simple, routine tasks, obviates the need for the ALJ to make a separate finding as to the ability to handle stress. Plaintiff does not otherwise offer an analysis as to how a finding of whether he could handle stress would ultimately affect his alleged disability. Finally, the Plaintiff objects to the mental assessment because the ALJ fails to address his "mild" difficulties in activities of daily living and social functioning. To the contrary, the ALJ did point out the fact that, in addition to the activity assessment by the state agency physicians, he considered the fact that the claimant played with his dogs, visits with his friends, and wallpapered his house. [ECF #10-2, p. 34]. Accordingly this Court finds that the ALJ did appear to consider his activities or daily living and social functioning. Therefore, the ALJ does not need to further include in

---

perform simple tasks *without* special supervision, while the RFC specifically limits Plaintiff to a supervised environment. Indeed, the ALJ's decision also includes the finding of other mental health professionals who evaluated Plaintiff, albeit he did not specify what weight he gave those opinions. Accordingly, this Court is unable to determine which evidence the ALJ specifically relied upon in order to determine whether substantial evidence is contained in the record supporting his decision.

his RFC assessment additional findings related to the activities of daily living and social functioning.

**IV.    GAF Scores**

Plaintiff's final objection is that the ALJ erred in failing to address all of Plaintiff's GAF scores. Plaintiff's argument is that GAF scores are medical opinions, therefore the ALJ is required to consider all of the GAF scores. [ECF #20, p. 9]. Within the ALJ's decision, the ALJ noted that Plaintiff was initially assigned a GAF score of 50 in March of 2012 after being evaluated at Chesterfield County Mental Health Care. [ECF #10-2, p. 31]. Thereafter, his GAF score was 60 in June of 2012. [ECF #10-2, p. 31]. The medical evidence suggests that Plaintiff was compliant with his medications and stated he was doing okay. [ECF #10-2, p. 31].

As correctly pointed out by the Magistrate Judge, the Social Security Administration has recently issued a directive clarifying the impact of GAF scores on disability decisions. Importantly, the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") abandons the use of GAF scoring. *Emrich v. Colvin*, No. 1:13cv1012, 2015 WL 867287, at *10 (M.D.N.C. Mar. 2, 2015). The GAF score provides but a snapshot opinion; thus while it is a rating, a GAF needs supporting evidence to provide it much weight. *Id.* It has previously been determined that a GAF score may not be indicative of a long term level of functioning. *Parker v. Asture*, 664 F. Supp.2d 544, 557 (D.S.C. 2009). Here, it appears the ALJ considered the fact that Plaintiff's GAF score rose after he began treatment, and that he was generally compliant with his medications. Other than arguing that the ALJ did not explicitly reference every one of Plaintiff's GAF scores, Plaintiff does not show that the ALJ did not adequately consider GAF scores as evidence. This Court finds that the ALJ appropriately considered GAF scores in conjunction with the other evidence. Therefore, Plaintiff's objection is overruled.

**Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court respectfully adopts in part and rejects in part the recommendation of the Magistrate Judge. The action is remanded to the Commissioner to properly evaluate the Plaintiff's RFC and the Plaintiff's credibility consistent with *Mascio*. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case is remanded to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina                                                          s/ R. Bryan Harwell
February 8, 2016                                                                   R. Bryan Harwell
                                                                                   United States District Judge